# Cahill-Swift Manufacturing Company v. City of Bardwell.

(Decided November 27, 1925.)

## Appeal from Carlisle Circuit Court.

1. Municipal Corporations—Mayor Pro Tem. can Only be Elected in Absence of Mayor.—A mayor pro tem. can only be elected in ab-

sence of incumbent mayor, and such election implies that there is a mayor duly elected and qualified, but who for some reason is unable to preside over meeting of council.

2.   Municipal Corporations—Mayor Pro Tem. Elected After Resignation of Mayor Held "Mayor in Fact" with Authority to Sign Warrants.—One elected mayor pro tem. of city of fifth class under laws 1904, chapter 116, at each council meeting after resignation of regular mayor, held, under statutes, section 3622, "mayor in fact," authorized to sign city warrants, issued under section 3640, on a day when he was not elected mayor pro tem., notwithstanding section 3648 provides power of mayor pro tem. shall continue only during day on which he is elected.

3.   Municipal Corporations—Warrants for Prior Indebtedness Not Invalidated Because City's Expenditures Exceeded Income in Year when Issued.—Warrants issued by city of the fifth class, under Laws 1904, chapter 116, in payment of indebtedness created seven years before by installation of system of waterworks, were not invalid because city's expenditures exceeded its income during year when they were issued.

BEN S. ADAMS for appellant.

JOHN E. KANE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Appellant, whom we will refer to as plaintiff, was unsuccessful in a suit against the city of Bardwell, which will be referred to as defendant.  Previous to 1904, the city of Bardwell was a city of the sixth class and in the year 1901, the residents of the town became anxious to have a system of water works.  Accordingly, the board of trustees enacted an ordinance calling an election to be held in November, 1901.  Proper notices were given and a bond issue proposed by that ordinance was approved by the people at the election.  The system of water works was then installed, and a large part of the material used in its installation was purchased from the plaintiff.  It paid a portion of the bill, and on January 13, 1903, there was a balance due plaintiff of $1,552.52, which remained unsettled.  The defendant was on March 25, 1904, made a city of the fifth class.  See chapter 116, page 281, Laws of Kentucky for 1904.

On February 5, 1905, plaintiff sued the city for this balance, and this suit remained on the docket until May 27, 1909, when it was dismissed settled.  The terms of the settlement were that the cost should be divided between the parties, and defendant should be permitted to

pay in installments. At that time the plaintiff's debt, interest and one-half the costs amounted to $2,271.86. This sum was divided into ten equal payments, for which, what the witness terms "warrants" were issued to the plaintiff. Three of these have been paid, and the other seven were the basis of plaintiff's action against the city. The first of these is:

"$227.18.    Bardwell, Ky., May 17th, 1909.

"Mr. J. O. Glenn, Treasurer City of Bardwell, pay to Cahill Swift Mfg. Company, or order two hundred twenty-seven and 18/100 dollars, for on account water works supplies. [To be paid Dec. 1st, 1911. No. 412.

"J. O. Glenn, Clerk,
"M. T. Shelbourne, Mayor."

The others are identical except the numbers and the due date.

Defendant for answer denied the execution of the warrants, denied that they had been presented or payment demanded; that M. T. Shelbourne was mayor, plead that at the time these warrants were issued, the city of Bardwell had already expended its income and revenue for the year 1909, and that these warrants represented a debt incurred in excess thereof and were therefore invalid.

The principal contention of defendant was that M. T. Shelbourne was not the mayor of Bardwell at the time of the execution of the warrants, and that hence these warrants were not signed and issued as required by section 3640 of the Kentucky Statutes.

It seems that in the early part of 1909, Mr. J. T. Davis resigned as mayor of defendant city and that at each meeting subsequently held, M. T. Shelbourne was elected mayor *pro tem.* Defendant insists that by section 3648, the authority and power of a mayor *pro tem*, shall continue only during the day on which he is chosen, and that, therefore, inasmuch as Mr. Shelbourne was not elected mayor *pro tem.* on May 27, 1909, he was on that day without authority to sign these warrants. A mayor *pro tem.* can only be elected in the absence of the mayor, and the election of a mayor *pro tem.* implies that there is a mayor duly elected and qualified, but he for some reason is not present at, or is unable to preside over, a meeting of the council. In this case, the city of Bardwell at the time of

Shelbourne's election, was without a mayor, as a result of the resignation of Mr. Davis. When Mr. Shelbourne was elected, he became the mayor of defendant city under section 3622 of the statutes, and it makes no difference what they called him, he was mayor. Hence he had authority to sign these warrants. There is no dispute about the authority of the clerk.

More than sixty pages of the record are taken up with proof of the multifarious demands made by plaintiff for the payment of these warrants. They were not only presented, and their payment demanded, but that was repeated time and time again. Quite a bit of the record is devoted to proof about what the income of defendant was for the year 1909, and about what its expenditures had been at the time of the execution of these warrants. That, however, had nothing to do with this case, as the debt was incurred in 1902, when the defendant purchased from the plaintiff these materials. The warrants issued in 1909 were merely evidences of this debt which had been created seven years before. It follows therefore, that the court erred in overruling plaintiff's motion to instruct the jury peremptorily to find a verdict for it, as requested in plaintiff's instruction B, which was marked "refused by the court."

The judgment is reversed and the cause remanded for consistent proceedings.